IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| SANDRA K. ADAMEK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 5:21-CV-00084-RWS-JBB |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |
| § | |
| § | |

**ORDER**

Before the Court is the Report and Recommendation of the United States Magistrate Judge (Docket No. 15), which contains his findings, conclusions and recommendations for the disposition of this matter. Plaintiff Sandra Adamek initiated the above-titled civil action, pursuant to the Social Security Act, Section 405(g), for judicial review of the Commissioner's denial of Plaintiff's applications for Social Security benefits. Docket No. 1. The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636 and the applicable orders of this Court. After reviewing the pleadings, the Magistrate Judge issued a Report recommending that the Commissioner's decision, which denied Plaintiff's requests for Social Security benefits, be affirmed. Docket No. 15. Plaintiff filed objections in response. Docket No. 16. The Court hereby adopts the Report and Recommendation of the Magistrate Judge (Docket No. 15) as the findings and conclusions of this Court.

I.   **BACKGROUND**

On March 7, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits. Docket No. 11-2. On November 12, 2020, the Administrative Law Judge

("ALJ") issued a decision finding Plaintiff was not disabled. Docket No. 11-2 at 10–24. Therein, the ALJ determined that, through the date last insured, Plaintiff had severe impairments of degenerative disc disease of the lumbar and cervical spine; degenerative joint disease of the left hip; bilateral carpal tunnel syndrome; right cubital syndrome status-post transposition; migraine with aura, not intractable; diabetes mellitus; major depressive disorder; post-traumatic stress disorder; and obesity. Docket No. 11-2 at 13–14. The ALJ further determined that Plaintiff did not have one of the impairments identified in 20 C.F.R. Part 404, Subpart P, Appendix I but now is unable to perform her past relevant work. *Id*. at 15–17, 22.

The ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) (2012), except for the following:

> [T]he claimant can frequently climb ramps and stairs; frequently climb ladders, ropes, scaffolds; and frequently stoop, crouch, kneel, and crawl. The claimant can perform frequent, but not constant, handling, fingering, and feeling with dominant right upper extremity. The claimant can perform frequent, but not constant, work around bright or flickering lights that might be experienced in welding or cutting metals. The claimant can have frequent, but not constant, exposure to temperature extremes of heat, wetness, and humidity. Mentally, the claimant can understand, remember, and carry out simple tasks with short, simple instructions. The claimant can make simple work-related decisions or judgments. The claimant can maintain attention and concentration and pace sufficiently to perform simple work tasks, and can tolerate only occasional workplace changes.

Docket No. 11-2 at 17–21.

Based on Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were jobs available in significant numbers in the national economy that Plaintiff could perform (cafeteria attendant, cashier, cleaner/housekeeper). Docket No. 11-2 at 22–23. Based on the foregoing findings, the ALJ determined Plaintiff was not disabled. Docket No. 11-2 at 23–24.

The Appeals Council denied Plaintiff's request for review. Subsequently, Plaintiff initiated this civil action, for judicial review of Plaintiff's denied application for Social Security benefits. *See generally*, Docket No. 1. According to the Plaintiff, the ALJ's decision is defective for the following two reasons: (1) the ALJ failed to properly consider the vocationally limiting effects of her severe impairments and (2) the ALJ relied on her own lay medical opinion in determining the Plaintiff's RFC. Docket No. 12 at 1-2.

After a review of the record below, the Magistrate Judge affirmed the denial of Plaintiff's application for Social Security benefits. *See generally*, Docket No. 15. Specifically, the Magistrate Judge found that the ALJ applied the correct legal standard, and that substantial evidence supported the determination that Plaintiff was not disabled. *Id.* Plaintiff now objects on the basis that, just like the ALJ, the Magistrate Judge is incorrect regarding whether the ALJ failed to consider the vocationally limiting effects of Plaintiff's severe impairments. Docket No. 16 at 2–3. Further, the Magistrate Judge misapprehended Plaintiff's second basis for her appeal—that the ALJ's residual functional capacity determination improperly relied on her own speculation, not relevant evidence (*e.g.*, "medical opinions, or medical or non-medical evidence which establishes Plaintiff's ability to perform work related activities"). *Id.* at 2. In fact, according to the Plaintiff, no such evidence exists in the record. *Id.*

**II.     LEGAL STANDARDS**

The Court reviews a magistrate judge's report and recommendation in light of any filed objections. 28 U.S.C. § 636(b)(1); *Wallace v. Mississippi*, 43 F.4th 482, 394–96 (5th Cir. 2022). The portions of the report and recommendations objected to are reviewed *de novo* while the remainder is reviewed for clearly erroneous factual findings and legal conclusions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000); *United*

*States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989); *Poe*, 2018 WL 4275839, at *2. "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006).

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (noting the inquiry is terminated if at any step the claimant is determined to be or to not be disabled).

Relevant to the case at hand, at Step 5, when a claimant's disability does not correspond to a listed impairment, a claimant incapable of performing her past work is, nonetheless, not disabled if she has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). Thus, Step 5 requires determining the claimant's residual functional capacity and then ascertaining whether work exists for the claimant in light of her residual functional capacity. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). At Step 5, the Commissioner bears the burden of proof to show that there is other gainful employment available in the national economy that the claimant can perform in light of her residual functional capacity determination. *Id*. This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.1987).

### III. ANALYSIS

The Court finds Plaintiff's objection without merit. As explained above, the Plaintiff first contends that the ALJ failed to include functional limitations in her residual functional capacity determination based upon *all* of the impairments deemed severe (*i.e.*, bilateral carpal tunnel

syndrome, diabetes mellitus-based neuropathy, and migraines with aura). Docket No. 12 at 8-9. For example, according to Plaintiff, although the ALJ acknowledged Plaintiff's migraines cause functional limitations, the limitations contained in the ALJ's RFC—frequent but not constant work around bright or flickering lights and frequent but not constant exposure to temperature extremes of heat, wetness, and humidity—have no relationship with the Plaintiff's migraines. *Id*. at 3. According to Plaintiff, the failure to inject limitations in keeping with Plaintiff's testimony regarding her migraines is improper because Plaintiff testified that with treatment, her migraine episodes have been reduced to two per month and the RFC does not adequately reflect her resulting functional abilities and limitations. Docket No. 11-2 at 18.

The ALJ, however, is not required to fully credit Plaintiff's testimony especially in light of contrary evidence in the record. Indeed, the ALJ has the "sole responsibility for determining the claimant's disability status." *Vasquez v. Comm'r of Soc. Sec. Admin.*, No. 7:21-CV-00028-O-BP, 2022 WL 2975471, at *3 (N.D. Tex. June 30, 2022), *report and recommendation adopted*, No. 7:21-CV-00028-O-BP, 2022 WL 2972240 (N.D. Tex. July 26, 2022); *see also Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Accordingly, an ALJ's RFC determination is an administrative assessment based on the totality of the evidence. *See* 20 C.F.R. § 404.1545; Soc. Sec. R. 96-8p; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Vasquez*, 2022 WL 2975471, at *3. Thus, contrary to Plaintiff's suggestion, the ALJ need not credit Plaintiff's testimony when inconsistent with the record medical evidence.

Here, the ALJ made the following findings regarding the Plaintiff's migraines and diabetes:

> As it related to diabetes mellitus with diabetic polyneuropathy, the record shows that this impairment was uncontrolled at times during the period under consideration. However, the record shows that the claimant had no major hypoglycemia events, no complications such as foot ulcers, or acute vision changes. As it relates to migraines, imaging of the head and brain revealed no acute abnormality and no acute intracranial abnormalities. Further, the record

>indicates that this impairment was under good control on gabapentin. Further, routine neurological examination found the claimant to be alert and oriented with normal memory and no significant cognitive deficiencies consistently noted. The record shows that diabetes mellitus and migraines were managed conservatively with medication with no evidence of significant exacerbation of symptoms during the period under consideration. This objective evidence is not fully consistent with the claimant allegations as it relates to diabetes mellitus and migraines; however, in consideration of the allegations and objective medical evidence such as elevated blood sugar, limitations such as frequent ladders, ropes, or scaffolds have been assigned residual.

Docket 11-2 at 20 (citations omitted). The ALJ identified such contrary evidence and weighed it against the testimony of the Plaintiff in order to make a final RFC determination. *See*, *e.g.*, Docket 11-2 at 18 ("The claimant alleges that [the degenerative hip joint disease] prevented her from sitting, standing, or walking for any significant period . . . .  However, routine physical examinations were overall normal . . . . Despite the claimant's allegations, . . . there is no evidence of atrophy noted in the record.").

Substantial evidence even supports the specific limitations identified by Plaintiff as unsupported, namely limitations concerning work around bright or flickering lights and exposure to temperature extremes of heat, wetness and humidity. Indeed, Plaintiff testified that during her migraines, Plaintiff prefers to stay in a dark room. Docket No. 11-2 at 56–57. In other words, Plaintiff avoids bright or flickering lights and environmental extremes when experiencing migraines. Accordingly, the ALJ found it appropriate to inject limitations to the final RFC concerning constant work in such environs that might expose Plaintiff to such conditions. Docket No 11-2 at 18. Thus, substantial evidence supports the ALJ's final RFC determination based on vocational limitations caused by Plaintiff's impairments determined to be severe.

Plaintiff's second argument—that the ALJ's RFC determination is based on her own lay person speculation—is also without merit and appears to misapprehend the analytical framework imposed on the ALJ when making RFC determinations. First, there is no requirement that an

ALJ's RFC determination mirror or match a medical opinion. *Myers*, 2021 WL 4025993, at *8. Rather, the ALJ, not a doctor nor a vocational expert, has the sole responsibility for making the final RFC determination, which necessarily requires the ALJ to interpret, assess and balance both medical and non-medical evidence. *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012). Thus, the ALJ's RFC determination is not a medical opinion. *Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317, 318 (5th Cir. 2003). Indeed, unlike medical providers and medical consultants, the ALJ may consider additional evidence including the claimant's statements and testimony concerning her symptoms, activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record. 20 C.F.R. § 404.1529; *see Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, *at 7–8 (5th Cir. Aug. 19, 2005) (concluding substantial evidence supported ALJ's RFC rendered by balancing just plaintiff's testimony, his observations of plaintiff during the hearing, and medical records demonstrating improvements in conditions); *Barton*, 2022 WL 2708770, at *8.

Here, contrary to Plaintiff's argument, the record is in no short supply of medical or non-medical evidence on which the ALJ could properly base her final RFC determination. Indeed, as explained above, the ALJ properly considered Plaintiff's medical records, *i.e.*, medical evidence, when determining the effects of Plaintiff's diabetes mellitus with diabetic polyneuropathy and migraines. Indeed, as the Magistrate Judge noted in the report, for each of Plaintiff's impairments determined to be severe, the ALJ considered Plaintiff's hearing testimony in light of record medical evidence such as, for example, highlighted by the following:

> Although there is evidence of slightly decreased grip strength of the right hand, by April 10, 2018, the record indicates that symptoms related to right cubital syndrome were overall resolved with no weakness in her grip strength. Bilateral carpal tunnel syndrome is noted as mild with occasional symptoms and that the claimant does well with splinting. This objective evidence is not fully consistent with the claimant allegations as it relates to bilateral carpal tunnel syndrome and

> right cubital syndrome; however, in consideration of the allegations and objective medical evidence such as slightly decreased grip strength, limitations such as frequent handling, fingering, and feeling have been assigned in the residual functional capacity.

Docket No. 11-2 at 18 (citations omitted).

After weighing the totality of evidence, the ALJ made the below final determination concerning Plaintiff's RFC:

> Taken as a whole, the general lack of significant musculoskeletal and neurological abnormalities, the imaging studies showing relatively minor positive findings, the typically normal neurological findings, and the claimant's relatively conservative and minimal treatment throughout the relevant period are inconsistent with the claimant's allegations.  For these reasons, especially considering her usually normal coordination and gait as well as notations of stable conditions, but also considering her obesity, and the effect it can have on musculoskeletal functioning, along with the degenerative disc disease of the lumbar and cervical spine; degenerative joint disease left hip; bilateral carpal tunnel syndrome; and right cubital syndrome signs and symptoms, the claimant is limited to, but can perform work at the light exertional level, except frequently climb ramps and stairs, frequently climb ladders, ropes, and scaffolds, frequently stoop, crouch, kneel, crawl, and perform frequent handling, fingering, feeling with the dominant right arm.  Considering the migraines and diabetes signs and symptoms, the claimant can have frequent, but not constant, work around bright or flickering lights and frequent, but not constant, exposure to temperature extremes.

*Id.* (citations omitted).  This is the type of analysis the ALJ is expected to perform when making an RFC determination and should be conflated with, as Plaintiff avers, an ALJ interposing her own lay opinion in the absence of medical evidence.  *See Gutierrez*, 2005 WL 1994289, *at 7–8.

As explained above, the ALJ relied on an array of record evidence, much of which spoke directly to Plaintiff's functional impairments.  *See Vasquez*, 2022 WL 2975471, at *3.  The ALJ determined Plaintiff's RFC by balancing the available and relevant medical and non-medical evidence.  *See, e.g.*, Docket No. 11-2 at 21.  Accordingly, the Court finds the ALJ properly considered the evidence and that substantial evidence supports the RFC determination.

## IV.   CONCLUSION

The Court has carefully conducted both a *de novo* review of those portions of the Magistrate Judge's report and recommendations to which Plaintiff objected and a review of the remainder of the report for clearly erroneous factual findings and legal conclusions. *See* 28 U.S.C. § 636(b)(1) (limiting District Judge to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made").  Upon such review, the Court has determined that the report of the Magistrate Judge is correct and Plaintiff's objections are without merit.  It is accordingly

**ORDERED** the report of the Magistrate Judge (Docket No. 20) is **ADOPTED** as the opinion of the District Court and that Plaintiff's objections are **OVERRULED**.  It is further

**ORDERED** that the above-entitled Social Security action be **AFFIRMED**.

**So ORDERED and SIGNED this 29th day of September, 2022.**

*[Signature]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE